UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MELISSA STANLEY,<br><br>individually and as representative of a class of participants and beneficiaries on behalf of The George Washington University Retirement Plan for Faculty and Staff and The George Washington University Supplemental Retirement Plan,<br><br>    Plaintiff,<br><br>    v.<br><br>GEORGE WASHINGTON UNIVERSITY, et al.,<br><br>    Defendants. | Civil Action No. 18-878 (JDB) |

## MEMORANDUM OPINION & ORDER

Melissa Stanley brings a putative class action against her former employer, George Washington University ("GW" or the "University"),[1] alleging multiple breaches of fiduciary duty related to the administration of employee retirement plans under the Employee Retirement Income Security Act of 1974 ("ERISA") §§ 502(a)(2), (a)(3), 29 U.S.C. §§ 1132(a)(2), (a)(3)). Compl. [ECF No. 1]. Pending before the Court is [21] GW's motion to dismiss. The parties dispute whether Stanley has standing to bring any ERISA claims based on a settlement agreement she entered, and, if she does, whether she has standing to bring claims based on certain investment options GW offered to plan participants in its capacity as plan fiduciary. See ERISA § 409(a), 29 U.S.C. § 1109(a). For the reasons stated below, the Court will order supplemental briefing on each issue.

---

[1] Stanley brings this suit against the University, its board of trustees, and its University Plan Administration Committee (collectively "GW").

1

I.   **Settlement Agreement**

In 2016, Stanley entered a settlement agreement with GW that included a general release of all claims against the University,[2] including claims for violation of "any federal" law. Agreement at 4. The terms of the broadly-worded release, however, expressly carve out "claims for vested benefits under employee benefit plans." Id. The parties dispute, among other things, whether Stanley's ERISA claims are "claims for vested benefits" within the meaning of the Agreement. See Stmt. of P. & A. in Supp. of Defs.' Mot. to Dismiss Pl.'s Compl. ("Defs.' Mot.") [ECF No. 21-1] at 14–16; Mem. of P. & A. in Opp'n to Defs.' Mot. ("Pl.'s Opp'n") [ECF No. 26] at 11–15.

If Stanley released her claims against GW under the Agreement, this Court lacks jurisdiction to hear this case. See Aulenback, Inc. v. Fed. Highway Admin., 103 F.3d 156, 161 (D.C. Cir. 1997) (explaining that "[c]omplete settlement" of claims "moots an action," which renders a court without jurisdiction under Article III); Jacobs v. Not-For-Profit Hosp. Corp., 285 F. Supp. 3d 316, 318–19 (D.D.C. 2018).[3] The Court therefore must resolve the scope of the release before proceeding to the merits.

The Agreement is governed by the laws of the District of Columbia. Agreement at 4; Pl.'s Opp'n at 12. "Under District of Columbia law, '[a] release is a form of contract, and the rules of contract construction govern its interpretation.'" Am. Civ. Constr., LLC v. Fort Myer Constr.

---

[2] In addition to the University, the release covers "all other of [GW's] former, current and future trustees, officers, employees, attorneys, and agents, predecessors, successors, assigns, divisions, departments, subsidiaries, and affiliates, whether in their representative or individual capacities." Confidential Separation Agreement & General Release ("Agreement") [ECF No. 24] at 3–4.

[3] Courts considering the effect of releases at the motion to dismiss stage have interpreted them as asserting a lack of subject matter jurisdiction under Federal Rules of Civil Procedure 12(b)(1). See Jacobs, 285 F. Supp. 3d at 318–19. Because "in deciding a Rule 12(b)(1) motion" the Court is "not limited to the allegations in the complaint, but may also consider material outside of the pleadings," the Court is permitted to consider the Agreement. Alliance for Democracy v. Fed. Election Comm'n, 362 F. Supp. 2d 138, 142 (D.D.C. 2005).

Corp., 246 F. Supp. 3d 309, 321 (D.D.C. 2017) (quoting GLM P'ship v. Hartford Cas. Ins. Co., 753 A.2d 995, 998 (D.C. 2000)). "The first step in interpreting a contract is to determine what a reasonable person in the position of the parties would have thought the disputed language meant." Debnam v. Crane Co., 976 A.2d 193, 197 (D.C. 2009). "Where the language [of a release] is clear and unambiguous, its plain language is relied upon in determining the parties' intention," and "[w]here the terms of the document leave no room for doubt, the effect of the release can be determined as a matter of law." GLM P'ship, 753 A.2d at 998 (citation omitted). However, "[i]f a contract is reasonably or fairly susceptible to different constructions or interpretations, it is ambiguous." Debnam, 976 A.2d at 197. "In determining whether a contract is ambiguous, we examine the document on its face, giving the language used its plain meaning." Id. "[I]f the provisions of the contract are ambiguous," then "[e]xtrinsic evidence may be used to 'determine the circumstances surrounding the making of the contract.'" Id. at 197 (quoting 1010 Potomac Assocs. v. Grocery Mfrs. of Am., Inc., 485 A.2d 199, 205–06 (D.C. 1984)). However, extrinsic evidence "may not be relied upon to show the subjective intent of the parties absent ambiguity in the contract's language." Id.

      GW contends that the exception in the release preserving "claims for vested benefits under employee benefit plans" unambiguously refers to claims arising under the contractual terms of an ERISA plan brought pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B). See Defs.' Mot. at 14–16; Reply in Supp. of Defs.' Mot. ("Defs.' Reply") [ECF No. 27] at 2–4. Because Stanley concedes that she is not challenging a denial of benefits under the terms of an ERISA plan, GW continues, the general release she signed—which covers everything except such a denial of benefits—plainly precludes her claims. Defs.' Reply at 2–4; see Pl.'s Opp'n at 15. Stanley disagrees, asserting that, as used in the Agreement, the "vested benefits" term plainly refers to

ERISA claims more broadly, including her claims for fiduciary breach arising under ERISA § 502(a)(2). Pl.'s Opp'n at 14–15. In short, the parties disagree about whether the "vested benefits" exception was intended specifically to refer to ERISA denial-of-benefits claims arising under section 502(a)(1)(B), or also generally captures statutory claims arising under sections 502(a)(2) and (a)(3).

The Court's analysis is one of contract interpretation, not statutory interpretation. Here, however, the parties' plain-meaning arguments are predicated on conclusory interpretations of how the term "claim for vested benefits under employee benefit plans" necessarily interacts with ERISA. In so doing, the parties have raised more questions than they have answered. See Sommers Drug Store Co. Emp. Profit Sharing Trust v. Corrigan, 883 F.2d 345, 349 (5th Cir. 1989) (noting that "whether a claim is for vested benefits is not always apparent" in the ERISA context).

The Seventh Circuit has said, for instance, that "a breach of fiduciary duty that diminishes [defined-contribution plan benefits] gives rise to a claim for benefits [under § 502(a)(2)] measured by the difference between what the retirement account was worth when the employee retired and cashed it out and what it would have been worth then had it not been for the breach." Harzewski v. Guidant Corp., 489 F.3d 799, 807 (7th Cir. 2007) (emphasis added). The D.C. Circuit, meanwhile, has cautioned against attempts to "recharacterize[] a claim for benefits [under § 502(a)(1)(B)] as a claim for breach of fiduciary duty" in the context of ERISA's requirement to exhaust administrative remedies before suing to vindicate "plan-based" rights. Stephens v. Pension Benefit Guar. Corp., 755 F.3d 959, 966 n.7 (D.C. Cir. 2014) (emphasis added) (citing Drinkwater v. Metro. Life Ins. Co., 846 F.2d 821, 826 (1st Cir. 1988)). And Chief Justice Roberts has noted a similar hesitation to construe "what is really a [§ 502(a)(1)(B)] claim for benefits under

4

<u>a plan</u> to be brought as a [§ 502(a)(2)] claim for breach of fiduciary duty." <u>LaRue v. DeWolff, Boberg & Assocs.</u>, 552 U.S. 248, 259 (2008) (Roberts, C.J., concurring) (emphasis added).

These and other decisions[4] arguably leave room for doubt as to whether the "vested benefits" term here unambiguously includes or excludes the fiduciary breach claims Stanley brings. Asserting that purportedly well-established boundaries within ERISA resolve the issue without addressing how the foregoing (and other relevant) cases might bear on the question will not, therefore, suffice.

Hence, before deciding the threshold jurisdictional question of whether the release covers Stanley's claims, the Court will order additional briefing on that issue. The parties should also address how they propose to proceed should the Court conclude that the "vested benefits" term is ambiguous, including whether motions for summary judgment with extrinsic evidence would be warranted.

## II.     The TIAA Real Estate Account and TIAA Traditional Annuity

Even if the release does not bar Stanley's claims, GW contends that the Court lacks jurisdiction to bring claims relating to certain investment options GW offered as a plan fiduciary. <u>See</u> Defs.' Mot. at 17–20. Specifically, GW argues that Stanley lacks standing to "press claims pertaining to the TIAA Real Estate Account"—one of several investment options offered—"for the simple reason that she does not allege that she ever elected that investment option." Def.'s Mot. at 17. She also lacks standing to pursue claims related to the "TIAA Traditional Annuity," GW claims, because while she alleges that assets in that fund are subject to an unreasonable "surrender charge" (<u>i.e.</u>, penalty) if withdrawn as a lump sum, the complaint contains no allegation

---

[4] <u>See also, e.g.</u>, <u>Boeckman v. A.G. Edwards, Inc.</u>, 461 F. Supp. 2d 801, 809–12 (S.D. Ill. 2006) (citing cases addressing "what constitutes a claim for vested benefits under ERISA"); <u>Stargel v. SunTrust Banks, Inc.</u>, 968 F. Supp. 2d 1215, 1222–1224 (N.D. Ga. 2013) (considering release excluding term "vested benefits" in ERISA case).

that she plans to withdraw.  Id. at 18.  As to both the TIAA Real Estate Fund and the TIAA Traditional Annuity, Stanley responds that the "overwhelming majority of decisions . . . have held [plaintiffs do] not need to allege that [they] sustained injury with respect to each [challenged] investment option in the Plans," but that "standing is properly established by alleging injury to the Plans as a whole."  Pl.'s Opp'n at 16 (citing cases).[5]

Stanley is correct that ERISA § 502(a)(2) permits plan participants to sue on behalf of the plan to help "ensur[e] that 'the benefits authorized by the plan' are ultimately paid to participants and beneficiaries."  LaRue, 552 U.S. at 253 (citation omitted).[6]  But ERISA § 502(a)(2) does not (and cannot) permit such suits in the absence of Article III standing.  See Wilcox v. Georgetown Univ., Civ. No. 18-422, 2019 WL 132281, at *9 (D.D.C. Jan. 8, 2019) (explaining that sections 502(a)(2) and (a)(3) "provide standing to beneficiaries to sue fiduciaries for imprudent actions" but "do[] not automatically satisfy constitutional standing for all claims"); see also Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547–48 (2016) ("Injury in fact is a constitutional requirement, and 'it is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing.'" (citation omitted)).  As in any other case, then, Stanley must establish a "particularized" injury that "affect[s] [her] in a personal

---

[5] The Court will not at this time decide Stanley's argument in the alternative that she has adequately pled a direct injury as to the TIAA Traditional Annuity because all invested assets—including hers—are subject to a "ten-year lockup" under which funds may be withdrawn only in ten annual installments.  Pl.'s Opp'n at 19–20.

[6] For instance, in the context of a defined benefit contribution plan (i.e., a plan that guarantees the participants a fixed level of income), the Supreme Court has held that individuals may sue a fiduciary whose breach "create[d] or enhance[d] the risk of default by the entire plan."  Id. at 256.  And in the context of defined contribution plans like the ones at issue here (i.e., plans based on amounts contributed and the investment performance of those contributions over time), the Court has held that individuals may sue fiduciaries for "breaches that impair the value of plan assets in a participant's individual account."  Id.  Note that in both cases the participant sued based on a particularized and concrete injury where the remedy for that injury flowed to the participant through the plan—e.g., by restoring plan stability or assets.  Although in this limited sense such suits are "derivative" or "representative," this in no way obviates the necessity of alleging individualized harm as to each alleged breach.

and individual way," id. at 1548 (citation omitted), "for each claim [she] seeks to press," DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 352 (2006).

Here, then, the Court must determine whether Stanley has standing as to each claim, not—as the parties have framed it—as to each investment option.[7] See Clark v. Duke Univ., No. 1:16-CV-1044, 2018 WL 1801946, at *4 (M.D.N.C. Apr. 13, 2018) (addressing constitutional standing in similar context on a claim-by-claim basis). This inquiry does not necessarily reduce to whether Stanley invested in one fund or another (or was subject to a surrender charge); all that is necessary is a sufficient nexus between the alleged breach and the claimed injury. Cf. Cryer v. Franklin Templeton Res., Inc., Civ. No. 16-4265, 2017 WL 4023149, at *4 (N.D. Cal. July 26, 2017) ("[I]n determining constitutional standing [in the context of ERISA], courts look not to individual funds but 'to the nature of the claims and allegations to determine whether the pleaded injury relates to the defendants' management of the Plan . . .'" (citation omitted)). Indeed, as GW has pointed out, multiple courts have held that "when a single [allegedly imprudent] decision by the plan fiduciary implicates a number of different investment options, a plaintiff who invested in at least one of those options has standing" to bring claims as to all of them. Defs.' Reply at 6 (citing cases).

The parties have only briefly addressed this key jurisdictional issue. See Defs.' Reply at 7. Accordingly, the Court will order supplemental briefing on this question. The briefing should clarify on a claim-by-claim basis the parties' positions as to whether the complaint sufficiently

---

[7] Rather than address standing on a claim-by-claim basis, both parties generally dispute Article III standing as to unspecified "claims" pertaining to each investment option. See, e.g., Defs.' Mot. at 17 (contending Stanley is "ineligible to press claims pertaining to the TIAA Real Estate Account" (emphasis added)); Pl.'s Opp'n (responding that Stanley has standing "with respect to the claims specific to the TIAA Real Estate Account" (emphasis added)). Although the Court presumes that GW disputes, at minimum, Stanley's standing to bring a claim under Count II as to each investment option (because the TIAA Real Estate Account and Traditional Annuity separately are listed in standalone paragraphs under Count II, see Compl. ¶¶ 221–22), it is unclear whether GW seeks to dismiss part or all of any additional claims or parts of claims in the complaint on the same grounds. Hence, GW should clarify the extent to which it challenges Stanley's standing as to any claims other than those expressly predicated on paragraphs 221 and 222 of her complaint.

alleges a relationship between the relevant <u>claims</u> (as opposed to the specific investment options) and a concrete and particularized injury <u>to Stanley</u> (as opposed solely to the Plan).

For the foregoing reasons, it is hereby

**ORDERED** that [21] GW's motion to dismiss is at this time[8] **DENIED WITHOUT PREJUDICE** pending the Court's determination of its subject matter jurisdiction; and it is further

**ORDERED** that the additional briefing shall proceed as follows:

1. By not later than April 30, 2019, plaintiff and defendants each shall file one brief not longer than fifteen pages addressing (1) whether the "vested benefits" language in the release unambiguously covers (or does not cover) Stanley's claims, (2) how this case should proceed if the Court were to find the release clause ambiguous, and (3) clarify on a claim-by-claim basis the parties' positions on whether the complaint adequately alleges a sufficient injury as to each relevant claim.

2. By not later than May 14, 2019, plaintiff and defendants each shall file one response brief no longer than seven pages.

3. The parties shall not address issues other than those ordered herein.

**SO ORDERED.**

/s/
JOHN D. BATES
United States District Judge

Dated: <u>March 29, 2019</u>

---

[8] Upon receipt of the supplemental briefing, the Court will consider both the standing arguments (as then framed by the supplemental briefs) and the parties Rule 12(b)(6) arguments (as set forth in the parties' already docketed briefs).