UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MELISSA STANLEY,

individually and as representative of a class of participants and beneficiaries on behalf of The George Washington University Retirement Plan for Faculty and Staff and The George Washington University Supplemental Retirement Plan,

    Plaintiff,

    v.

THE GEORGE WASHINGTON UNIVERSITY, et al.,

    Defendants.

Civil Action No. 18-878 (JDB)

## MEMORANDUM OPINION

Melissa Stanley brings this putative class action against her former employer, The George Washington University,[1] alleging breaches of fiduciary duty in violation of the Employee Retirement Income Security Act of 1974 ("ERISA") §§ 502(a)(2), (a)(3) (codified at 29 U.S.C. §§ 1132(a)(2), (a)(3)). Pending before the Court is [21] GW's motion to dismiss. GW argues that Stanley lacks standing to sue because she signed a general release of claims against the University. Stanley responds that her claims fall into an express exclusion in the general release preserving claims for vested benefits under her retirement plan. For the reasons stated below, the Court finds that Stanley has released her fiduciary breach claims against GW under the terms of the release. Because this Court lacks jurisdiction over released claims, the Court will grant GW's motion and dismiss the complaint.

---

[1] Stanley brings this suit against the University, its board of trustees, and its University Plan Administration Committee (collectively "GW" or "the University").

1

# BACKGROUND

## I.    Statutory Background

ERISA is a "comprehensive and reticulated" statute aimed at protecting participants in private employee retirement plans. Nachman Corp. v. Pension Benefit Guar. Corp., 446 U.S. 359, 361 (1980); see 29 U.S.C. § 1001(a)–(b). Today, most private retirement plans are "'defined contribution plan[s]' or 'individual account plan[s].'" See LaRue v. DeWolff, Boberg & Assocs., Inc., 552 U.S. 248, 250 n.1 (2008) (citation omitted). Such plans "promise[] the participant the value of an individual account at retirement, which is largely a function of the amounts contributed to that account and the investment performance of those contributions." Id.

ERISA authorizes participants to bring various "types of civil actions" to protect their interests. Mass. Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 139 (1985); see ERISA § 502(a), 29 U.S.C. § 1132(a). Some of those actions "focus upon specific areas," or particular types of ERISA violations, while others are "'catchalls,' providing 'appropriate equitable relief' for . . . injuries caused by violations that § 502 does not elsewhere adequately remedy." Varity Corp. v. Howe, 516 U.S. 489, 512 (1996). Two "specific" and one "catchall" action are relevant to Stanley's claims.

The first specific type of action, brought pursuant to ERISA § 502(a)(1)(B), empowers a participant to "recover benefits due to [her] under the terms of [her employee benefit] plan, to enforce [her] rights under the terms of the plan, or to clarify [her] rights to future benefits under the terms of the plan." ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B). Section 502(a)(1)(B) suits, or plan-based suits, provide a remedy "with respect to the interpretation of plan documents and the payments of claims," Varity, 516 U.S. at 512, and may be used "to recover accrued benefits" due under the plan, Russell, 473 U.S. at 147. Most circuit courts, including the D.C.

Circuit, have held "that a participant [is required to] exhaust . . . administrative remedies" internal to the plan before making a plan-based claim under § 502(a)(1)(B). LaRue, 552 U.S. at 258–59 (Roberts, C. J., concurring); see Commc'ns Workers of Am. v. AT&T, 40 F.3d 426, 431 (D.C. Cir. 1994) ("[P]laintiffs seeking a determination pursuant to ERISA of rights under their pension plans 'must . . . exhaust available administrative remedies . . . before they may bring suit . . . .'"). "The exhaustion doctrine effectuates Congress's purpose in requiring that benefit plans provide for administrative review procedures by ensuring" that participants use "internal remedial procedures" when making claims for benefits under their plans. Stephens v. Pension Benefit Guar. Corp., 755 F.3d 959, 964–65 (D.C. Cir. 2014); ERISA § 503, 29 U.S.C. § 1133.

The second specific type of action, set forth in ERISA § 502(a)(2), permits participants and others to sue plan administrators for violations of fiduciary duties set forth in ERISA § 409(a), 29 U.S.C. § 1109(a). Section 409(a), in turn, "impose[s] [duties] on fiduciaries . . . 'relat[ing] to the proper management, administration, and investment of fund assets,' with an eye toward ensuring that 'the benefits authorized by the plan' are ultimately paid to participants and beneficiaries." LaRue, 552 U.S. at 253 (quoting Russell, 473 U.S. at 142). Fiduciaries that have breached their duties in violation of section 409(a) are "liable to make good to such plan any losses to the plan resulting from each such breach." ERISA § 409(a). Because section 502(a)(2) suits, or statute-based suits, are brought on behalf of a pension plan, they "do[] not provide a remedy for individual injuries distinct from plan injuries." LaRue, 552 U.S. at 256. Nevertheless, because a fiduciary breach may affect only some subset of participants in a defined contribution plan, an individual plan participant may sue on behalf of the plan to "recover[]for fiduciary breaches that impair[ed] the value of plan assets in [her] individual account." Id.

The "catchall" provision, section 502(a)(3), permits suits to "enjoin any act or practice which violates any provision of this subchapter [of ERISA] or the terms of the plan, or . . . to obtain other appropriate equitable relief . . . to redress such violations." ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3). "Appropriate" equitable relief is "relief that [was traditionally] available in equity," Mertens v. Hewitt Assocs., 508 U.S. 248, 256 (1993) (emphasis omitted), and that is not otherwise available through a section 502(a)(1)(B) suit for "benefits due . . . under the terms of the plan," Varity, 516 U.S. at 515 (alteration omitted); see Russell, 473 U.S. at 144; Boster v. Reliance Standard Life Ins. Co., 959 F. Supp. 2d 9, 30 (D.D.C. 2013) ("[C]ourts in this Circuit have generally followed the view of the majority of circuits that a breach of fiduciary [duty] claim under § [502](a)(3) cannot stand when a plaintiff has an adequate remedy for her injuries under § [502](a)(1)(B)." (citation omitted)).

Suits under ERISA sections 502(a)(2) and (a)(3) are meaningfully distinct from those brought via section 502(a)(1)(B). Section 502(a)(2) and (a)(3) claims are generally brought in conjunction "to enforce statutory ERISA rights," whereas section 502(a)(1)(B) claims are brought to enforce "contractual rights created by the terms of a benefit plan." Stephens, 755 F.3d at 965 (second emphasis added); see id. at 964–67 (distinguishing ERISA claims "alleging a statutory violation" from "claims for benefits" under "the terms of [employee] benefit plans"); see also Zipf v. AT&T, 799 F.2d 889, 891–94 (3d Cir. 1986). And as the D.C. Circuit has held, participants must administratively exhaust claims asserting contractual rights, but not statutory rights,[2] before filing suit in federal court. Moreover, while section 502(a)(2) suits are brought in a representative

---

[2] Importantly, "[t]his exception to the exhaustion requirement does not embrace plan-based claims 'artfully dressed in statutory clothing,' such as where a plaintiff seeks to avoid the exhaustion requirement by recharacterizing a claim for benefits as a claim for breach of fiduciary duty." Stephens, 755 F.3d at 966 n.7 (citation omitted).

4

capacity, so that recovery runs to the plan, section 502(a)(1)(B) remedies "run[] directly to the injured [participant or] beneficiary." Varity, 516 U.S. at 512.

Because of these critical distinctions, the Supreme Court has cautioned that claims properly brought under section 502(a)(1)(B) may not necessarily also be brought under sections 502(a)(2) and (a)(3). See Varity, 516 U.S. at 515 (noting that section 502(a)(1)(B) claims are "outside the framework of [section 502(a)(2) claims]" and that section 502(a)(3) covers only injuries that "§ 502 does not elsewhere . . . remedy"); see also LaRue, 552 U.S. at 258–59 (Roberts, C.J., concurring) ("The significance of the distinction between a § 502(a)(1)(B) claim and one under § 502(a)(2) is not merely a matter of picking the right provision to cite in the complaint. Allowing a § 502(a)(1)(B) action to be recast as one under § 501(a)(2) might permit plaintiffs to circumvent safeguards for plan administrators that have developed under § 502(a)(1)(B).").

With these background principles in mind, the Court turns to the relevant facts and procedural history.

## II.     Facts and Procedural History[3]

Stanley is a former GW employee who participates in two of the University's ERISA-regulated retirement plans—The George Washington University Retirement Plan for Faculty and Staff and The George Washington University Supplemental Retirement Plan (collectively, the "Plans"). Compl. [ECF No. 1] ¶¶ 17, 29. The Plans are "defined contribution, individual account . . . employee benefit pension plans." Id. ¶¶ 17, 21. As the designated plan administrator, GW is the ERISA fiduciary responsible for selecting and managing the investment options provided to participants under the Plans. Id. ¶¶ 31, 34; see 29 U.S.C. § 1002(16)(A)(i). Stanley currently has a "vested account balance in the [Plans]." Compl. ¶ 29.

---

[3] The facts are drawn from plaintiff's complaint and assumed to be true for purposes of the motion to dismiss. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

In 2016, for reasons unrelated to the present suit, Stanley entered a confidential settlement agreement with the University in return for valuable consideration. See generally Confidential Settlement Agreement & General Release ("Agreement") [ECF No. 24].[4] The agreement contains a "General Release" clause that provides, in relevant part, as follows:

> Ms. Stanley, on behalf of herself and anyone who might claim through her, hereby forever releases . . . the George Washington University . . . from any and all claims . . . of any nature whatsoever . . . (collectively, "Claims"), which Ms. Stanley has or may have or which may hereafter accrue or which may be asserted by another on her behalf, arising prior to her execution of this Agreement. This release includes, without limitation . . . Claims for violation of any federal . . . statute . . . including but not limited to Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, the Age Discrimination in Employment Act, the Family Medical Leave Act, the D.C. Family and Medical Leave Act, the Genetic Information Nondiscrimination Act of 2008, and the D.C. Human Rights Act. It is expressly understood that this is a GENERAL RELEASE, and is intended to release claims to the fullest extent permitted by law. Excluded from this General Release is an action by Ms. Stanley to enforce the terms of this Agreement, claims for vested benefits under employee benefit plans, claims that arise after Ms. Stanley signs this Agreement, any right Ms. Stanley has to file a charge with a government agency (although she releases and waives, and agrees not to seek or accept, any monetary payment or other individual relief in connection with any such charge) and any other claim which cannot be released by private agreement as a matter of law.

Id. at 3–4. Stanley does not dispute that she voluntarily executed, and is subject to, the Agreement's terms, including the General Release.

Approximately two years after entering the Agreement, Stanley brought this putative class action against GW under ERISA § 502(a)(2) and (a)(3). Compl. at 1–2, 5. The complaint alleges that GW breached its fiduciary duties to participants in four ways. Count I alleges that GW caused participants to pay unreasonable recordkeeping and administrative fees. Id. ¶¶ 208–14. Count II

---

[4] Courts considering the effect of releases at the motion to dismiss stage have interpreted them as asserting a lack of subject matter jurisdiction under Federal Rules of Civil Procedure 12(b)(1). See Jacobs, 285 F. Supp. 3d at 318–19. Because "in deciding a Rule 12(b)(1) motion" the Court is "not limited to the allegations in the complaint, but may also consider material outside of the pleadings" to determine its jurisdiction, the Court is permitted to consider the Agreement. Alliance for Democracy v. Fed. Election Comm'n, 362 F. Supp. 2d 138, 142 (D.D.C. 2005). Although the Agreement is confidential and therefore filed under seal, the parties have reproduced in public filings the relevant contract language quoted herein.

alleges that GW imprudently offered unreasonably expensive and underperforming investment options. Id. ¶¶ 215–25. Count III alleges that GW imprudently obtained services from investment funds that required the University to offer participants the funds' proprietary investment products. Id. ¶¶ 226–36. And Count IV alleges that GW improperly retained multiple recordkeepers to administer the Plans when prudent fiduciaries would have used only one recordkeeper. Id. ¶¶ 237–44.[5] For these alleged ERISA violations, Stanley asks the court inter alia to find GW liable for breaching its fiduciary duties, to order GW to restore to the Plans lost benefits resulting from each breach, to remove those who breached their duties and enjoin them from future ERISA violations, to reform the Plans to include only prudent investments, and to certify a class action against GW with Stanley as the named class representative. See id. at 71–72.

GW has moved to dismiss, arguing that Stanley lacks standing because she has released her claims under the terms of the settlement agreement. See Defs.' Mot. to Dismiss [ECF No. 20]; Statement of P. & A. in Supp. of Defs.' Mot. to Dismiss Pl.'s Compl. ("Defs.' Mot.") [ECF No. 21-1] at 14–15.[6] In opposition, Stanley contends that her claims fall into the exclusion in the release preserving "claims for vested benefits under employee benefit plans." Mem. of P. & A. in Opp'n to Defs.' Mot. ("Pl.'s Opp'n") [ECF No. 26] at 2, 14–15. The Court ordered both parties to submit supplemental briefing on this and other standing questions. See March 29, 2019, Mem. Op. & Order. The motion to dismiss is now fully briefed and ripe for consideration.

---

[5] Stanley does not contend that any of these claims arose after the Agreement was signed.

[6] The Court previously denied without prejudice GW's motion to dismiss pending submission of supplemental briefing on standing. See March 29, 2019, Mem. Op. & Order [ECF No. 31] at 8. Having received and considered the supplemental briefing, the Court construes GW's motion to dismiss as resubmitted on the grounds described in both its original and supplemental briefing.

7

**LEGAL STANDARD**

Courts consider motions for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). See Am. Freedom Law Ctr. v. Obama, 821 F.3d 44, 48 (D.C. Cir. 2016). Under Rule 12(b)(1), the party seeking to invoke the jurisdiction of a federal court—here, Stanley—bears the burden of establishing that the court has jurisdiction. See US Ecology, Inc. v. U.S. Dep't of Interior, 231 F.3d 20, 24 (D.C. Cir. 2000). In adjudicating the motion to dismiss, the Court must "take as true all well-pled factual allegations within [the] complaint," but must "disregard any legal conclusions, legal contentions couched as factual allegations, and unsupported factual allegations within the complaint." Gulf Coast Mar. Supply, Inc. v. United States, 867 F.3d 123, 128 (D.C. Cir. 2017).

**ANALYSIS**

The Court lacks subject matter jurisdiction over released claims. See Aulenback, Inc. v. Fed. Highway Admin., 103 F.3d 156, 161 (D.C. Cir. 1997) (explaining that "[c]omplete settlement" of claims "moots an action," thereby divesting plaintiffs of standing to sue); Jacobs v. Not-For-Profit Hosp. Corp., 285 F. Supp. 3d 316, 318 (D.D.C. 2018) ("[A] valid settlement agreement generally moots a legal action between the parties to the agreement to the extent that the agreement covers the subject matter of the action."). Before reaching the merits, the Court must therefore turn to the scope of the release.

"'[A] release is a form of contract, and the rules of contract construction govern its interpretation.'" Am. Civ. Constr., LLC v. Fort Myer Constr. Corp., 246 F. Supp. 3d 309, 321 (D.D.C. 2017) (quoting GLM P'ship v. Hartford Cas. Ins. Co., 753 A.2d 995, 998 (D.C. 2000)).[7]

---

[7] The Agreement provides, and the parties appear to agree, that District of Columbia law governs interpretation of the release. See Agreement at 4; Pl.'s Opp'n at 12; Suppl. Br. in Supp. of Defs.' Mot. to Dismiss ("Defs.' Suppl. Br.") [ECF No. 33] at 1. Several circuits have held, however, that federal common law applies when courts interpret a settlement agreement releasing ERISA claims. See, e.g., Chaplin v. NationsCredit Corp., 307 F.3d

8

"The first step in interpreting a contract is to determine what a reasonable person in the position of the parties would have thought the disputed language meant." Debnam v. Crane Co., 976 A.2d 193, 197 (D.C. 2009). "[I]n determining what a reasonable person in the position of the parties intended, . . . the reasonable person is: (1) presumed to know the circumstances surrounding the making of the contract; and (2) bound by the usages of the term which either party knows or has reason to know and the course of conduct of the parties." Fairfax Vill. Condo. VIII Unit Owners' Ass'n v. Fairfax Vill. Cmty. Ass'n, Inc., 726 A.2d 675, 677 n.4 (D.C. 1999). "Where the language [of a release] is clear and unambiguous, its plain language is relied upon in determining the parties' intention," and "the effect of the release can be determined as a matter of law." GLM P'ship, 753 A.2d at 998. However, "[i]f there is more than one interpretation that a reasonable person could ascribe to the contract, while viewing the contract in context . . . the contract is ambiguous." Nextel Spectrum Acquisition Corp. v. Hispanic Info. & Telecomm. Network, Inc., 503 F. Supp. 2d 334, 338 (D.D.C. 2007). "Ambiguities will not be sought out," however, and "no ambiguity exists . . . if the language [of the release] is given the meaning of common understanding." Med. Serv. of Dist. of Col. v. Llewellyn, 208 A.2d 734, 736 (D.C. 1965).

The parties' dispute hinges on the following language in the General Release:

> This release includes, without limitation . . . Claims for violation of any federal . . . statute . . . including but not limited to Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, the Age Discrimination in Employment Act, the Family Medical Leave Act, the D.C. Family and Medical Leave Act, the Genetic Information Nondiscrimination Act of 2008, and the D.C. Human Rights Act. It is expressly understood that this is a GENERAL RELEASE, and is intended to release

---

368, 372, 376 (5th Cir. 2002); Morais v. Cent. Beverage Corp. Union Emps.' Suppl. Ret. Plan, 167 F.3d 709, 712 (1st Cir. 1999); McClellan v. Midwest Machining, Inc., 900 F.3d 297, 302 (6th Cir. 2018). The D.C. Circuit has not decided the question, and courts in this district have relied on state law when interpreting the release of ERISA claims. See, e.g., Russell v. Harman Int'l Indus., Inc., 945 F. Supp. 2d 68, 77 (D.D.C. 2013), aff'd, 773 F.3d 253 (D.C. Cir. 2014). The Court need not decide the question here. "The relevant federal substantive law" includes "common-sense canons of contract interpretation" that are "derived from state law." Morais, 167 F.3d at 712 (citations omitted). Because this case turns on general contract principles that equally apply under District of Columbia and federal common law, the Court finds that it would reach the same conclusion irrespective of which law governs. The Court therefore draws from District of Columbia law, as the parties have, to set forth the applicable general principles.

> claims to the fullest extent permitted by law. Excluded from this General Release [are] . . . claims for vested benefits under employee benefit plans . . . .

Agreement at 4. GW argues that the broad language releasing all claims alleging violations of "any federal . . . statute" plainly covers Stanley's fiduciary breach claims under ERISA sections 502(a)(2) and (a)(3). See Defs.' Mot. at 16. And the exclusion in the release preserving "claims for vested benefits under employee benefit plans" does not apply, GW says, because that language refers to section 502(a)(1)(B) claims for vested benefits arising under the terms of Stanley's ERISA-governed plans—claims that Stanley concedes she does not bring here. See id.; see also Pl.'s Opp'n at 15. Stanley responds first that the clause generally releasing federal claims does not cover ERISA claims because it does not expressly mention ERISA. Pl.'s Opp'n at 13. "Moreover," Stanley continues, the carveout for "claims for vested benefits" plainly preserves fiduciary breach claims brought under ERISA sections 502(a)(2) and (a)(3). Id.; see Pl.'s Suppl. Mem. of P. & A. Regarding "Vested Benefits" and Standing ("Pl.'s Suppl. Br.") [ECF No. 32] at 5–6.

The Court finds that Stanley has released her claims under the Agreement and thus lacks standing to sue. As an initial matter, Stanley's ERISA claims plainly fall within the language releasing "<u>any and all</u> claims" "for violation of <u>any</u> federal . . . statute." Agreement at 4 (emphases added). ERISA is, of course, a federal statute. And, as noted above, Stanley here brings actions under ERISA sections 502(a)(2) and (a)(3) alleging various violations of the duties set forth in ERISA § 409(a). See Compl. at 1, 4–5. Stanley's rejoinder—that the release lists numerous federal statutes but does not include ERISA—is unpersuasive. The Agreement expressly releases "all" claims for violations of federal statutes "<u>including but not limited to</u>" violations of the listed statutes. Agreement at 4 (emphasis added). And in the very next clause, the release goes on to say that "[i]t is expressly understood that this is a GENERAL RELEASE, and is intended to release

claims to the <u>fullest extent permitted by law</u>." <u>Id.</u> (emphasis added). "[T]he law is clear that a broad and unambiguous release," such as this one, "need not list every conceivable cause of action that might come within its terms." <u>Mwabira-Simera v. Sodexho Marriot Mgmt. Servs.</u>, No. Civ.A.04-0538 JDB, 2005 WL 1541041, at *2 (D.D.C. June 30, 2005), <u>aff'd</u>, 204 F. App'x 902 (D.C. Cir. 2006) (citing cases); <u>see also, e.g.</u>, <u>Chaplin</u>, 307 F.3d at 373 ("[A] general release of 'any and all' claims applies to all possible causes of action, unless a statute specifically and expressly requires a release to mention the statute for the release to bar a cause of action under the statute. ERISA contains no such requirements."); <u>Fair v. Int'l Flavors & Fragrances, Inc.</u>, 905 F.2d 1114, 1117 (7th Cir. 1990) (holding that general release of "any claim" covered all ERISA claims); <u>Schumacher v. AK Steel Corp. Ret. Accumulation Pension Plan</u>, No. 1:09-cv-794, 2011 WL 13130831, at *3 (S.D. Ohio June 27, 2011) ("[A]s a general rule, a release need not expressly refer to the ERISA statute in order to be enforced against ERISA claims."). Hence, the Court rejects Stanley's contention that the Agreement is distinguishable, in any relevant sense, from one that expressly released all violations of ERISA.

Because the language releasing all federal claims unambiguously covers Stanley's ERISA claims, "[o]ne thing is clear: unless . . . [the exclusion] set forth in the release applies to [her claims] . . . then the language barring claims that arise under ERISA disposes of the present case." <u>Howell v. Motorola</u>, 633 F.3d 552, 559 (7th Cir. 2011). As noted above, Stanley reads the exclusion as preserving section 502(a)(2) claims alleging a broad array of fiduciary misconduct, including offering underperforming investment options, levying unreasonable recordkeeping fees, and other purportedly imprudent choices. <u>See</u> Compl. at 4–5. She also reads the exclusion to permit equitable relief under section 502(a)(3) in connection with those alleged fiduciary breaches—

including the restoration of all losses to the Plans, removing fiduciaries found to have breached their duties, and other equitable remedies. Id. at 71–72.

The exclusion cannot be read so expansively. By its terms, the release carves out only claims for benefits "under employee benefit plans." Agreement at 4 (emphasis added). "[T]he common legal usage of the term 'under' . . . [is] pursuant to, in accordance with, or as authorized or provided by." Davis ex rel. LaShonda D. v. Monroe Cty. Bd. of Educ., 526 U.S. 629, 659–60 (1999); see also id. (noting that cases have defined the term "under" as "indicating subjection, guidance or control, and meaning 'by authority of,'" or "'by and through the authority of'" (quoting 43 Words and Phrases 149–152 (1969)). Here, then, the phrase "claims . . . under employee benefit plans" refers to claims brought pursuant to, or by the authority of, the participant's employee benefit plan.

Understood in the context of ERISA,[8] such claims plainly refer to contractual, or "plan-based," claims of the kind that typically are brought pursuant to ERISA § 502(a)(1)(B).[9] See Stephens, 755 F.3d at 964–65, 67 (distinguishing "plan-based" claims brought under "the contractual terms of the [employee benefit] plan" from "statutory claim[s]" arising under "the provisions of ERISA and its regulations"); Zipf, 799 F.2d at 891–94 (referring to contractual claim

---

[8] Although the Court's analysis of the exclusion is one of contract interpretation, not statutory interpretation, the parties' plain-meaning arguments concerning the exclusion are predicated on how the term "claim for vested benefits under employee benefit plans" is commonly understood and used in the context of ERISA. See Pl.'s Suppl. Br. at 3 (arguing that "ERISA case law supports Stanley's position that her claim[s]" fall within the exclusion); Defs.' Suppl. Br. at 2 (arguing that the defendants' proffered interpretation "aligns with a significant body of [ERISA] case law"). As with other courts that have interpreted the scope of a similar exclusion in a general release, then, the Court will look in part to that broader context. See, e.g., Halldorson v. Wilmington Tr. Ret. & Institutional Servs. Co., 182 F. Supp. 3d 531, 542 (E.D. Va. 2016) (interpreting scope of carve-out in general release in light of ERISA case law and statutory definitions); see also Fairfax Village, 726 A.2d at 677 n.4 (in determining what a "reasonable person" would have intended, courts must take into account "the circumstances surrounding" the contract and "the usages of the term" the parties know or have reason to know).

[9] Of course, a plan-based claim might not be brought under section 502(a)(1)(B) were a participant to "artfully dress[]" a "plan-based claim[]" as one brought under ERISA section 502(a)(2). Stephens, 755 F.3d at 966 n.7 (citation omitted). Here, however, Stanley has expressly conceded she is not bringing a contractual, or plan-based, claim under any statutory heading. See Pl.'s Opp'n at 15; Pl.'s Suppl. Br. at 5

12

as one for "benefits under the [employee benefit] plan" (emphasis added)). Indeed, in at least two cases involving similar general releases, a carve-out for claims "under the plan" was interpreted as saving contractual, but not fiduciary breach, claims. See In re SunTrust Banks, Inc. ERISA Litig., No. 1:08-CV-03384-RWS, 2016 WL 4377131, at *2 (N.D. Ga. Aug. 17, 2016) (dismissing "claims under § 502(a)(2)" because "claims for vested benefits due under the plan can only be brought under § 502(a)(1)(B)" (emphasis added)); Stargel v. SunTrust Banks, Inc., 968 F. Supp. 2d 1215, 1222–23 (N.D. Ga. 2013), vacated on other grounds, 791 F.3d 1309 (11th Cir. 2015) ("The carve out for 'Claims related to . . . vested benefits earned under any . . . employee benefit plan' merely preserves [plaintiff's] right to the benefits she was entitled to under the terms of [defendant's] employee benefit plans at the time she signed the Release . . . [and] cannot reasonably be read to preserve [a] right to pursue breach of fiduciary duty claims under § 502(a)(2) and (a)(3)." (emphasis added)).

Confirming this reading, the language "under employee benefit plans" in the carve-out closely parallels ERISA section 502(a)(1)(B), which provides that participants may bring contractual claims for "benefits . . . under the terms of [their employee benefit] plan[s]." ERISA § 502(a)(1)(B) (emphasis added). The carve-out also mirrors ERISA's provision setting forth claims procedures for contractual benefits claims. See ERISA § 503, 29 U.S.C. § 1133 (requiring plans to notify participants "whose claim for benefits under the [employee benefit] plan has been denied." (emphasis added)). Moreover, when referring to contractual claims brought pursuant to section 502(a)(1)(B), courts generally refer to claims brought "under the plan," or some similar variation thereof. See, e.g., Russell, 473 U.S. at 144 (describing section 502(a)(1)(B) as "the statutory provision explicitly authorizing a beneficiary to bring an action to enforce his rights under the plan" (emphasis added)); Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 108 (1989)

(noting that § 502(a)(1)(B) "allows a suit to recover benefits <u>due under the plan</u>." (emphasis added)).[10]

Here, of course, Stanley has expressly conceded that she does not bring claims for benefits under her employee benefit plans. <u>See</u> Pl.'s Opp'n at 15 (explaining that "Stanley is not 'challenging denials of benefits based on plan interpretations,'" but instead is alleging that "the Plan fiduciaries breached their duties . . . and so are liable [to the Plan] under § [409]" of ERISA). Instead, as she puts it, her "claims are statutory, and seek to enforce ERISA's substantive guarantees." Pl.'s Suppl. Br. at 5. Because Stanley's fiduciary breach claims concededly arise under rights conferred by ERISA, not "under [her] employee benefit plans," Agreement at 4, they fall outside the plain language of the exclusion in the General Release.[11]

This construction also best comports with the principle that "a contract [must be] construed as a whole, giving effect to all of the contract's provisions." <u>Fudali v. Pivotal Corp.</u>, 623 F. Supp. 2d 1, 9 (D.D.C. 2007) (citation omitted); <u>see also</u> <u>Abdelrhman v. Ackerman</u>, 76 A.3d 883, 891 (D.C. 2013). As the Court already has observed, the Agreement contains sweeping language that releases "all" violations of "any" federal statute—followed by language stating that "[i]t is expressly understood" that the General Release "is intended to release claims to the <u>fullest extent</u>

---

[10] By contrast, claims under section 502(a)(2), like those Stanley brings here, are not described as claims under, pursuant to, or as authorized by, employee benefit plans. Rather, such claims typically are described as fiduciary breach claims brought <u>on behalf</u> of the plan and <u>under ERISA</u>. <u>See, e.g.</u>, LaRue, 552 U.S. at 251 (explaining that ERISA § 502(a)(2) "authorizes . . . plan participants . . . to bring actions <u>on behalf of a plan</u> to recover for violations of the obligations <u>defined in [ERISA] § 409(a)</u>." (emphases added)); <u>Wilcox v. Georgetown Univ.</u>, Civil Action No. 18-422 (RMC), 2019 WL 132281, at *7 (D.D.C. Jan. 8, 2019) ("Section § [502](a)(2) allows plan participants to sue a fiduciary <u>on behalf of the plan</u> for 'appropriate relief' <u>under [ERISA § 409]</u>." (emphases added)).

[11] The parties also dispute whether Stanley's fiduciary breach claims may properly be characterized as claims for "vested benefits," as that term is used in the exclusion. Stanley says the answer is yes, contending that "the majority of Circuit Courts . . . have held that 'vested benefits' include ERISA breach of fiduciary duty claims under § 502(a)(2)." Pl.'s Resp. to Defs.' Suppl. Br. [ECF No. 35] at 3. GW disagrees, arguing that "many courts have held . . . [that] a release exclusion for 'vested benefits' does <u>not</u> preserve breach of fiduciary duty claims like those Stanley has sought to bring here." Defs.' Suppl. Br. at 4. The Court need not resolve that question here. Whether or not claims for fiduciary breach may be characterized as claims for "vested benefits," the Court finds that the language of the release preserves only contractual claims for benefits brought under the terms of Stanley's plan.

permitted by law." Agreement at 4 (emphasis added). If the carve-out is read not only to preserve claims under § 502(a)(1)(B), but also, as Stanley suggests, to preserve fiduciary breach claims under §§ 502(a)(2) and (a)(3), then the exclusion essentially would preserve all ERISA claims. In the absence of language clearly stating that intention, such a broad and open-ended interpretation of the exclusion would be at odds with the language of the General Release considered as a whole.

Acknowledging this, Stanley urges the Court to resolve any tension between the release language and an expansive reading of the exclusion in her favor, relying on the canon of construction providing that "specific terms and exact terms are given greater weight than general language." Pl.'s Opp'n at 13 (quoting Wash. Auto. Co. v. 1828 L St. Assocs., 906 A.2d 869, 880 (D.C. 2006)). But that canon does not apply. The "rule of construction providing that specific clauses prevail over general clauses presumes that the clauses stand irreconcilably in conflict." Ohio Power Co. v. Fed. Energy Regulatory Comm'n, 744 F.2d 162, 168 n.7 (D.C. Cir. 1984). Where "both the specific and general provisions may be given reasonable effect," however, "both are to be retained." Id. Here, there is no necessary conflict or ambiguity. Reading the general provisions in the release as broadly releasing claims for violations of ERISA, and the exclusion as carving out only contractual claims asserted pursuant to the relevant benefit plan, gives both clauses reasonable effect. Stephens, 755 F.3d at 964–66.

Not only is that result supported both by the plain language of the agreement and the ERISA case law, it also comports with common sense. As the D.C. Circuit explained in Stephens, before participants may make contractual claims under their employee benefit plans, they must first exhaust administrative procedures—a requirement that "reduces the number of frivolous lawsuits, promotes the 'consistent treatment of claims for benefits,' provides a 'nonadversarial method of claims settlement,' and 'minimize[s] the cost of claims settlement.'" Id. at 965 (citation omitted)).

15

Statutory ERISA claims, by contrast, are costlier, open-ended, and may be brought directly in federal court.  See id. at 966.  It is therefore no surprise that parties might draft language to preserve the former but to release the latter.

Hence, the Court finds that Stanley's claims fall within the general provisions in the release, are not saved by the exclusion for benefits claims brought under employee benefit plans, and are therefore waived.

## CONCLUSION

For the foregoing reasons, the Court will grant GW's motion and dismiss the complaint for lack of subject matter jurisdiction.  A separate order will issue on this date.

/s/
JOHN D. BATES
United States District Judge

Dated:  July 15, 2019